```
 1               IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF TEXAS

 3                      MARSHALL DIVISION

 4   DATATREASURY CORPORATION      )(

 5                                 )(    CIVIL DOCKET NO.

 6                                 )(    2:13-CV-431-JRG-RSP

 7   VS.                           )(    MARSHALL, TEXAS

 8                                 )(

 9   FISERV, INC., ET AL.          )(    FEBRUARY 12, 2014

10                                 )(    10:00 A.M.

11                        MOTION HEARING

12          BEFORE THE HONORABLE JUDGE ROY S. PAYNE

13               UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16   FOR THE PLAINTIFFS: (See sign-in sheets docketed in
                          minutes of this hearing.)
17

18   FOR THE DEFENDANTS: (See sign-in sheets docketed in
                          minutes of this hearing.)
19

20   COURT REPORTER:     Ms. Shelly Holmes, CSR
                         Official Reporter
21                       United States District Court
                         Eastern District of Texas
22                       Marshall Division
                         100 E. Houston Street
23                       Marshall, Texas  75670
                         (903) 923-7464
24

25   (Proceedings recorded by ECRO, transcript produced on a CAT
     system.)
```

I N D E X

February 12, 2014

|                               | Page |
| ----------------------------- | ---- |
| Appearances                   | 1    |
| Hearing                       | 3    |
| Court Reporter's Certificate  | 29   |

1               LAW CLERK:  All rise.

2               THE COURT:  Good morning.  Please be seated.

3               We are here today for the status conference in the

4      DataTreasury versus Fiserv case, which is 2:13-431 on our

5      docket.

6               Would counsel state their appearances for the record?

7               MR. GILLILAND:  Derek Gilliland with Christian Hurt

8      and Johnny Ward on behalf of the Plaintiff, DataTreasury

9      Corporation.

10              THE COURT:  All right.  Thank you.

11              MR. SMITH:  Your Honor, to start off, from the

12     Defendants' side, Michael Smith, Dave Roodman, and Emma Harty

13     for the 431 Defendants, with the exception of the ones that we

14     listed on the sign-in sheet.

15              THE COURT:  All right.  Thank you, Mr. Smith.

16              MR. DAVIS:  Tom Davis in the 431 case for East Texas

17     Financial, Citizens Bank, DirectTex Holding, Gladewater, and

18     Computer Science Professionals, Inc. (sic).

19              THE COURT:  Thank you, Mr. Davis.

20              Anyone else?

21              MR. ROBERTS:  Your Honor, Randy Roberts for DATCU

22     Credit Union.

23              THE COURT:  Thank you, Mr. Roberts.

24              MR. GILLAM:  Gil Gillam for Bankers -- Bancorp of

25     Oklahoma and Bankers Bank, Your Honor.  Ready.

1          THE COURT:  Thank you, Mr. Gillam.

2          MR. MANN:  Your Honor, Mark Mann here for Citizens

3  National Bank in Henderson, Citizens Bancshares in this case

4  only, in the 431 case.

5          THE COURT:  All right.  Thank you, Mr. Mann.

6          MR. HOSCH:  Charles Hosch for Advanced Federal Credit

7  Union.

8          THE COURT:  Thank you.

9          All right.  Mr. Smith, I think we're -- we're all

10  gathered here on your emergency motion, so I'll give you the

11  floor.

12          MR. SMITH:  Thank you, Your Honor.

13          This is a peculiar situation, and that's why we filed

14  the motion that we did.  We thought it was necessary to raise

15  the issue with the Court.

16          In January, the Court had a status conference for two

17  cases that involved two -- in -- in this litigation that had

18  two providers and about 81 Defendants, and the Court gave that

19  a trial setting of 13 months from the date of the status

20  conference with the Markman about six months away.

21          The next day, the Court consolidated a lead case into

22  it, and that's the case that my clients are in.  And that lead

23  case was not ready for a status conference.  It still had a

24  number of Defendants that hadn't been served, had not appeared.

25  There hadn't been a notice of readiness.  So we were brought

1   into a case, and the way the Court's schedule works, that

2   contemplates that we would have gotten infringement contentions

3   sometime before.

4          As the briefing that was concluded last night informed

5   Your Honor, the Defendants actual -- the Plaintiff actually

6   provided infringement contentions on February the 7th, which

7   put us seven weeks -- put us seven weeks behind where we would

8   normally expect to be, and that's not counting the parties that

9   had not been served.

10          Now, we got some more information.  The -- the

11   Plaintiffs did some work getting some parties served.  One

12   party appeared, one party settled.  There are still six parties

13   in -- in the -- the 431 that have not yet appeared.  Two are

14   due to answer on the 20th.  Two, from my discussions with

15   Plaintiff's counsel, are due to answer probably around the end

16   of February, but there are two more, WCM and Veritext, who are

17   parties that signed the motion that we're here on.  And -- and

18   for the record, that's Docket 177, Page 12.  Their lawyers

19   signed that asking for the status conference after therein.

20          Their answer date is about April the 8th.  So had this

21   case proceeded under the normal schedule, we would have had a

22   status conference on the 431 in May, and we believe that due to

23   the circumstances of the case and in order to allow people to

24   get into the case, we need some relief on some of the dates.

25   We have a number of parties who aren't getting the time that

1   they need who aren't even before the case at this point.

2        Now, with respect to the specific relief that we're

3   asking for, we didn't have that in our motion because we didn't

4   have the facts regarding -- well, let me -- let me back up.

5        We had asked the Court for a status conference.  The

6   Court set this motion for a hearing, but you just referred to

7   it as a status conference.  Do you want me to tell you what we

8   want, or -- or -- or am I overstepping what the Court wants to

9   hear?

10       THE COURT:  I always want you to tell me what you

11   want.

12       MR. SMITH:  What I want, Your Honor, is to move the --

13   move the case so that the Markman, instead of being in July, is

14   December, and the trial setting, instead of being February, is

15   in July.  That would be a five-month extension.  That would

16   move us from a -- from 13 months from January to -- to 18

17   months.  But if you look at when we actually would have come up

18   for a status conference, we would have come up otherwise in

19   May.  It only gives us one more month than if you had given us

20   a 13-month trial setting then.

21       We believe that's appropriate because in this case,

22   unlike the case that the Court gave us the trial setting in,

23   we're now up to 130 Defendants, at least double the providers

24   that were in the case when the Court gave us that date.  The

25   Court knows from the discovery order that we put in pursuant to

1    the Court's order, we -- the Plaintiff is going to be able to

2    take up to 2,600 hours of depositions.  We have 70 Defendant

3    groups.  And a few days ago, we got a list of the potential

4    witnesses from the Plaintiff.  Nobody has been able to count

5    those, but in the 444 pages, it works out to about 2,400

6    witnesses.

7         Given the past history of this litigation, we

8    anticipate the Plaintiffs will depose probably three people per

9    individual bank.  So this isn't a case where they're not going

10   to take the depositions.  We think they're going to take a lot

11   of depositions.  So this particular case, we believe, is not a

12   good candidate for a 13-month to trial from January which was

13   still three -- three months away from the last of the

14   Defendants answering in the case.

15        And that's all I have, Your Honor.  I'm happy to

16   answer any questions if the Court has any.

17        THE COURT:  Well, I'll -- I'll just tell you a couple

18   of things.  The ordinary procedures in the ordinary case might

19   contemplate that the Court would wait until all parties have

20   been served and appeared.  But at some point, the Court has an

21   independent interest in moving its docket.  This case was filed

22   more than eight months ago, and it is at -- at this point the

23   Court has to step in and move things.

24        The fact that there are some few Defendants who have

25   not yet appeared cannot hold the case up indefinitely.  If and

1   when those Defendants appear, if they need relief that can't be

2   given within the structure of the current schedule, then the

3   Court has the option of simply severing them out, putting them

4   on their own track, but the Court doesn't have any way of

5   knowing when those people will ever be served and when they'll

6   appear.  And so you should not expect that we simply won't act

7   until all of the Defendants in a multi-Defendant case have

8   appeared.

9        But the -- the point you raise about whether or not

10  the schedule allows sufficient time is -- you know, that's the

11  point that the Court wants to address.

12       How many months may be allowed from the date of the

13  scheduling conference to the trial in a certain case -- I mean,

14  a lot of that is simply dictated by the Court's schedule in the

15  other cases.  There's nothing magic about any certain number of

16  months, so I'm -- I don't feel the need to give the -- the 431

17  case the same number of months from any certain date until

18  trial as the 432 or 433 case got.

19       The question is, is there any reason the case can't be

20  ready within that schedule?  But -- so if -- if you want to

21  further address those issues, I'm -- I'm wide open to listening

22  to that, and I can let the Plaintiff respond after you've done

23  that.

24       The hope is that -- that the Defendants will, through

25  the meet and confer process, work out or at least narrow down

1   those issues down to if there are particular deadlines that

2   need addressing, we'll do that.  But I don't want to

3   mechanically move the Markman back a certain number of months

4   so that there will be the same gap there was in another case,

5   because the -- the reason the Markman was set where it was had

6   more to do with the availability of time on the Court's

7   calendar than anything else.

8            So does that make sense?

9            MR. SMITH:  It -- it does, Your Honor, and the -- and

10  we have tried to look at adjusting the dates because what we

11  would normally do in this situation is simply see if we could

12  compress the dates to preserve the Markman and the trial

13  setting.

14           The reason why we've had difficulty doing that here is

15  because the Court's setting -- the January settings were --

16  were several months quicker than -- than we had anticipated.

17  They were several months quicker than -- than the settings, for

18  example, in October or any of the months prior to that.  So

19  there wasn't room for us to compress the dates further down.

20  We came up with a schedule that -- a schedule that -- that fit,

21  but that was looking at the people that had notice of the

22  status conference in January that had -- that got their

23  infringement contentions back in December.

24           Again, the 431 case was brought in the day after

25  that -- those status conferences, and we didn't get our

 1  infringement contentions until February the 7th.

 2          Now, again, normally, if we could have compressed the

 3  dates to get us on the same schedule, that's what we would be

 4  proposing.  The problem is because the Markman was only a

 5  little over six months from the date of the status conference,

 6  it meant that we weren't able to simply push the dates back a

 7  little bit in order to get us folded in.  So we're tight on our

 8  dates.

 9          That, again, is not taking into account the parties

10  that have signed the -- the motion asking for a status

11  conference who won't come into the case until later.  The --

12  the latter two that come in in April will actually be coming in

13  several days after invalidity contentions are due.  So --

14          THE COURT:  Well, when you say coming in, you're

15  talking about filing an answer?

16          MR. SMITH:  Yes, Your Honor.

17          THE COURT:  Which I -- I mean, I understand that the

18  answer has a certain role and everything, but I don't think

19  that a delay in filing the answer prevents them from -- from

20  doing what they need to do to -- to be ready for these

21  subsequent events.

22          Now, the -- there is no necessary space between the --

23  between the Markman and the trial.  It's -- is the -- would

24  giving you some relief on the Markman hearing take care of

25  the -- the problems that you're addressing?

```
 1              MR. SMITH:  I'll -- I'll take that, Your Honor, but I
 2   looked at that because I was hoping we could adjust the Markman
 3   back a little bit and -- and still preserve the trial setting.
 4   And because the -- the Markman is in July and the trial setting
 5   is actually only five -- no, seven months after that, it was a
 6   little tight.  We would take -- it would be preferable to have
 7   the Markman pushed back a little bit, as opposed to nothing,
 8   but I'm just cautioning the Court that because the dates are
 9   tight enough between the Markman and the trial, that's --
10   that's why I'm not jumping at just we'll move the Markman back
11   a little bit and we can still make the trial.
12              We would have to compress those dates in a way that
13   I -- I'm concerned might be a little compressed.
14              THE COURT:  Well, a little compressed is -- is not a
15   problem.
16              MR. SMITH:  Well, I think -- I think a 13-month trial
17   setting for a case involving 130 parties, 2,700 anticipated
18   fact witnesses to be considered in discovery, and 2,600 hours
19   of -- or maybe I've got that wrong, maybe it's only 23 -- no,
20   it is 2,600 hours of depositions by the Plaintiff is -- is a
21   fairly aggressive schedule regardless.  But we'll take what
22   relief we can get, Your Honor.
23              THE COURT:  Well, I'm -- I'm assuming that an awful
24   lot of those witnesses and depositions would relate only to --
25   to very few of the Defendants.  I wouldn't expect that every
```

 1   Defendant is going to try and participate in all of the

 2   witnesses of all the other Defendants, would you?

 3          MR. SMITH:  I -- I -- I agree with that, Your Honor.

 4   The problem is it's that the individual Defendants have to

 5   present those witnesses.  So if -- if we've got 150 Defendants

 6   and the Plaintiff follows the form of -- of needing an

 7   anticipated three depositions per Defendant, it's not a matter

 8   of -- that we wouldn't all have to go out and take those

 9   depositions.  It's a matter of everybody's going to have to

10   produce their people and defend them.

11          And -- and -- and, again, this isn't the type of case

12   where -- where I know that the -- the Plaintiff's counsel is

13   just going to pick and choose.  They're -- they're going to --

14   they have a lot of ground to cover, and based on past history,

15   I think they're going to try to cover that.

16          So when we talk about needing a lot of deposition

17   discovery, that's not just speculation.  That's informed --

18   an in -- an informed opinion based on the prior history of the

19   litigation.

20          THE COURT:  Well, tell me, if each Defendant has to

21   present three of its witnesses for deposition, how is that a

22   burden on the Defendants?

23          MR. SMITH:  It would mean three depositions a day for

24   the next -- every day almost between now and --

25          THE COURT:  I mean, the Plaintiff may have to

1    multi-track these depositions to get them done, but if the

2    Defendants are just going to participate in their own

3    witnesses's depositions, then how does that make it harder on

4    the Defendants?

5            MR. SMITH:  Because the Defendants in many cases

6    are -- are represented by suppliers.  The suppliers are having

7    to cover -- the counsel for the suppliers are having to cover

8    multiple of those Defendants at the same time.  So it -- it --

9    I mean, it can be done, Your Honor.  It's just that's a reason

10   why we need a little bit more time.  Because while all of that

11   is going between now and October, we've got claim construction

12   to take care of and we've got all these individual parties that

13   have to be taken care of.  And -- and it -- my -- I anticipate

14   that the Plaintiff's discovery will be somewhat fact intensive

15   when it comes to depositions, simply because the number of --

16   of Defendants.

17           THE COURT:  Okay.  All right.  Thank you.

18           MR. SMITH:  That's all I have, Your Honor.

19           THE COURT:  All right.

20           MR. SMITH:  Thank you.

21           THE COURT:  Are there -- I guess before I hear from

22   the Plaintiff, are there other Defendants who want to be heard

23   also on -- on this issue?  If so, I'll be happy to hear from

24   them.

25           MR. HEIDRICK:  If I -- if I could, Your Honor.

14

 1          THE COURT:  All right.

 2          MR. HEIDRICK:  My name, just briefly, Your Honor,

 3  is -- is Jay Heidrick.  I represent Defendants in the 433 case,

 4  except for DATCU, Cherokee County, Veritext, and WCM Holdings,

 5  I believe.

 6          I just wanted to add to what Mr. Smith said about the

 7  issue with the Plaintiff taking a number of deposition hours

 8  for the Plaintiff.  You're correct on that.  While that does

 9  address the -- that is the burden on the Plaintiff.  What that

10  does not allocate, though, is the availability for the

11  Defendants, then, to go take their -- their depositions, to go

12  present their case as far as the various defenses that they

13  have.

14          There's a number of licensees that will be deposed.

15  There are a number of witnesses from DataTreasury that are

16  going to be deposed.  There are prior art witnesses that are

17  going to be deposed.  So while you asked a lot of very good

18  questions about the burden on the Plaintiff and while the

19  Defendants would not have to attend each of those, that does

20  not account for if the Plaintiffs are taking depositions every

21  day between now and the close of discovery, the availability

22  for us to go take some of those depositions that would be

23  consolidated for all parties to participate in.

24          THE COURT:  So what -- what I'm hearing from you is

25  you're concerned that the Plaintiffs will not be available on

 1    days when you want to take depositions because they're taking

 2    other depositions?

 3            MR. HEIDRICK:  Not only the Plaintiffs, Your Honor,

 4    but if -- if -- if some of the Defendants aren't available, as

 5    well, because they're in depositions with the Plaintiff on

 6    those days, as well, that leads to further -- further

 7    scheduling and problems along with that.

 8            THE COURT:  Uh-huh.  All right.  I --

 9            MR. HEIDRICK:  That's all I have, Your Honor.

10            THE COURT:  -- I understand.  Thank you, Mr. Heidrick.

11            MR. HURT:  Good morning, Your Honor.  This is kind of

12    a moving target, so I don't know exactly how to respond.

13            I think on the scheduling point, the -- the five-month

14    delay was -- this was the first time we sort of heard of it

15    this morning, and I don't see -- and the Defendants don't seem

16    to argue that the four or so banks that have yet to answer

17    would be a reason to push the schedule.  I think we've heard

18    more of today is about how big this case is.

19            THE COURT:  Well -- well, answer me one thing.

20            MR. HURT:  Sure.

21            THE COURT:  Did the Plaintiff just serve infringement

22    contentions on February 7 on all of the 431 Defendants?  Is

23    that the -- do you agree that that was the date when that

24    occurred?

25            MR. HURT:  That's correct, with a few exceptions.

 1    There's some Defendants in multiple cases, so some of the

 2    Defendants that were originally named in the 432 case and the

 3    433 case also received infringement contentions earlier.  But

 4    the last round of infringement contentions went out on February

 5    7th.

 6            And one of the things, Your Honor, that we've already

 7    done to sort of accommodate the perceived prejudice from that

 8    disclosure is we've agreed to allow the Defendants to push

 9    their initial disclosure and invalidity contentions --

10    contentions' dates back by a few weeks, and there's an

11    unopposed motion currently pending on that point.

12            I think, you know, for this case -- for these

13    Defendants who have yet to answer to I guess follow along with

14    what Court was saying or the Court had stated is we can work

15    with each of those Defendants as needed to adjust the schedule.

16    Things like invalidity contentions are common issues, and so

17    those interests the other Defendants already in the case

18    represent --

19            THE COURT:  Well, tell me something --

20            MR. HURT:  Sure.

21            THE COURT:  -- Mr. Gilliland (sic), why are there

22    Defendants who are still being served?

23            MR. HURT:  So there's a few reasons for that.  One of

24    them is some of these Defendants were served in the wrong case.

25    And so when we initially filed the lawsuit -- for example, we

1   thought someone was a Jack Henry customer when they weren't.

2   They're a Fiserv customer.  And it took us a while to figure

3   that out, and so we moved them to the 431 case from the -- from

4   another case.

5           In the other instance, what we've been trying to do is

6   get service waivers and work with these Defendants so we don't

7   have to formally serve them.  Through that process, there's

8   been a lot of back and forth, and we've kind of been getting

9   the runaround.  And we finally issued the summons earlier this

10  month on a few of those Defendants.

11          The only Defendant that was recently served, due to

12  our oversight, was Pilot Point Bank and Point Bank, which is

13  a -- which we believe is a Fiserv customer and will be

14  represented by Fiserv's counsel anyway as Fiserv has -- has

15  been doing for the vast majority of the Defendants in the 431

16  case.

17          THE COURT:  Well, I can tell you that if you're going

18  to file cases with this many Defendants, we expect you to -- to

19  manage your cases in a way that you can accomplish --

20          MR. HURT:  Yes, sir.

21          THE COURT:  -- service on a more timely basis and move

22  these along.  I -- I -- I think at this stage of the case, we

23  should not have Defendants who we're still waiting for service

24  on.

25          MR. GILLILAND:  Your Honor, I'm Derek Gilliland on

 1  behalf --

 2          THE COURT:  Oh, Mr. Gilliland.

 3          MR. GILLILAND:  -- of Plaintiff, DataTreasury

 4  Corporation.  Mr. Hurt was at the microphone, and I just wanted

 5  to let the Court know that the delay in getting service on

 6  those Defendants falls squarely on my shoulders, and I hear the

 7  Court loud and clear.  And I believe we have it all taken care

 8  of now and will avoid any such problems going forward.

 9          THE COURT:  All right.  Thank you, Mr. Gilliland.

10          And I apologize, Mr. Hurt, for --

11          MR. HURT:  Oh, I understand.

12          THE COURT:  I -- the reason -- one the reasons I want

13  to -- I bring that up now is that I can see that in this case,

14  there are going to be serious management issues on both sides,

15  but certainly on the Plaintiff's side.  And the Court will

16  expect that you're going to devote sufficient resources to --

17  to this case to move it along despite the fact that we have as

18  many Defendants as we have.  It -- it's not going to be an

19  acceptable excuse that you're doing something else.  You're

20  going to need to accommodate the needs of the Defendants to

21  move forward on -- on many different tracks at the same time in

22  order to get this case done and --

23          MR. HURT:  Well, yes, sir, and what our -- what we've

24  done in the past is double track depositions.  We've had

25  large -- so the DataTreasury litigation has been going on for

1    pretty much a decade, and we've double tracked depositions,

2    and --

3            THE COURT:  I don't know if double is going to do it,

4    but anyway.

5            MR. HURT:  Well, maybe triple track.  But we will --

6    we -- you know, the burden, I think, primarily does fall on us

7    because it's ultimately our burden of proof in the lawsuit, and

8    so we will do what we can to -- to continue to push the case

9    forward.

10           THE COURT:  But, you know, I'll say the same thing

11   with respect to Defendants.  If one firm is going to represent

12   a great number of Defendants, it's going to be incumbent on

13   that firm to devote the resources to -- to move the case on

14   behalf of each of those clients on -- on a timely basis, even

15   though they have joint representation.

16           But I am concerned about the fact that -- that the

17   infringement contentions were just served on a number of the --

18   it sounds like on the vast majority of the 431 Defendants.  And

19   whether that will require some relief on the Markman hearing is

20   something the Court will have to look at.

21           Do you have any response on -- specifically on the

22   request that the Markman hearing be moved?

23           MR. HURT:  Yes.  I don't think we need to move it.  I

24   mean, this -- these patents have gone through at least two

25   Markman hearings and five claim construction orders and, you

 1  know, a re-examination, as well.  I can't imagine that there

 2  will be a significant Markman workload given that history.  And

 3  so I don't see a -- a need to move the Markman hearing.

 4          And in terms of -- in terms of -- of -- of the late --

 5  or the service of the infringement contentions on the 7th, the

 6  invalidity contentions day has been pushed back two weeks, and

 7  I do still think there's sufficient time to be able to get

 8  expert discovery done between the Markman and the trial date.

 9          THE COURT:  I just want to respond to that statement.

10  I -- I don't think it has been pushed back two weeks.

11          MR. HURT:  Oh, I -- I apologize, Your Honor.  There's

12  a motion pending.

13          THE COURT:  Yeah.  And it concerns me that the --

14  there was an initial request to move it back, I think, to the

15  14th.  In order to try and keep this case moving, the Court set

16  it for the 7th, and I believe on the 7th, we got a motion to

17  move it back two more weeks.  That -- obviously filing a motion

18  like that on the last day puts the Court in the position of

19  either causing what might be significant prejudice to one side

20  or -- or moving the date, and the mere fact that it is

21  unopposed should not be taken as a guarantee that it's going to

22  be granted.

23          I think it should be obvious to everybody in this case

24  that the Court takes the position that we have an independent

25  interest in keeping this case moving.

21

1           MR. HURT:  Yes, sir.

2           THE COURT:  And just because the lawyers may not

3   always share that does not mean that it's not going to

4   continue.

5           MR. HURT:  Right.

6           THE COURT:  But in any event, so you're --

7           MR. HURT:  I wanted to add one thing on the

8   infringement contentions is -- is in substance, they're all

9   virtually identical, and so we've served infringement

10  contentions earlier in this case that contain the same accused

11  instrumentalities as the one on the 7th, as well as with

12  respect to Fiserv has been -- as this has come out in some of

13  the briefing, and prior -- their cust -- Fiserv's customers

14  have been involved in prior cases, and we filed similar

15  infringement contentions in those cases.  So February 7th

16  wasn't the first time that at least Fiserv had notice of what

17  was being accused in this lawsuit.

18          And on the unopposed motion point, I just wanted to

19  clarify that we didn't -- did not join the motion to push the

20  schedule back.  We did not oppose the Defendants' motion and

21  timely served our initial disclosures, along with our

22  infringement contentions.

23          The only other point I think I'd like to make is there

24  is an issue that came up about how WCM Holdings is not -- their

25  answer date is not due until April.  There's a little bit of a

1    clarification I'd like to make.

2           WCM Holdings is actually a party in the 433 case, as

3    well as the 431 case.  They answered already in the 433 case

4    and were served infringement contentions in the 433 case back

5    in January.  And those infringement contentions identified

6    Fiserv.  And I believe based on when we did serve WCM Holdings

7    in the 431 case, their answer is actually due in March.  But

8    it's the same attorney who has been involved in the 433 case,

9    and they've had notice -- he has had notice for a number of

10   months now that we were going to allege infringement of those

11   banks based on their use of Fiserv.  And that seemed to be the

12   outlier of the dates that counsel for the Fiserv Defendants was

13   talking about.

14          The remaining Defendants will all answer, I believe,

15   this month.

16          THE COURT:  Well, Mr. Hurt, tell me --

17          MR. HURT:  Yes, sir.

18          THE COURT:  -- if the infringement contentions that

19   you have now served in the 431 case were substantially

20   identical to those that you've served already, I guess, on

21   December the 20th in the related cases, why did it take you

22   until February 7th to get them out to the Defendants in the 431

23   case?

24          MR. HURT:  I -- I believe it was just the -- just

25   under the -- the scheduling and actually getting the parties

1    together, and we had to identify -- so in substance, they're

2    the same, but you have to identify -- each particular bank has

3    a certain brand that they utilize, and it was just a matter of

4    putting together thousands of pages of charts.

5            THE COURT:  Which -- which means to me that at least

6    on that task, you didn't devote the resources necessary to get

7    it done on a more timely basis.  If you're going to pursue

8    this number of Defendants, it's not going to be an acceptable

9    excuse that there are so many Defendants, we just couldn't get

10   it done on time.  That -- that's the -- a problem of your own

11   making is that this date that these infringement contentions

12   were served is not in accordance with the rest of the schedule

13   in this DCO.  And that's something that -- that we're going to

14   now -- have to now deal with.  But in any event, I -- I hope

15   that -- that that won't happen in the future in this case.

16           MR. HURT:  Yes, sir.

17           THE COURT:  Okay.  Mr. Smith, if -- if I give you some

18   time now to meet with your counterparts on the other side on

19   this issue of whether some relief on the Markman hearing will

20   accommodate the compression of some of these earlier dates, do

21   you think that would be helpful?

22           MR. SMITH:  Yes, Your Honor, I believe that would be

23   helpful.  I have also lost -- oh, here we go.

24           Could I have the overhead for just a -- a second?

25           THE COURT:  I think it's on.

1          MR. SMITH:  Your Honor, the reason why I came up with

2     the April the 8th date was because --

3          THE COURT:  The April the 8th date for what?

4          MR. SMITH:  For the -- the April the 8th date for

5     the -- for the last two Defendants to appear.  What I've put on

6     the -- on the ELMO is a cell phone that has a picture of a

7     February 5th letter from Mr. Gilliland to the counsel for the

8     two Defendants we're talking about, Mr. Woody Glen.  And the

9     last sentence of that reads:  Accordingly, please confirm by

10    signing in the space below that you waive formal service of

11    process for the above case, and in return, DataTreasury will

12    agree that you have 60 days from today's date to appear or

13    otherwise respond.  And the date of the letter is the 5th of

14    February, and the date of the signature is the 10th.  So that's

15    why we came up with that date.  That's the date that we're

16    working off there.

17         But, yes, Your Honor, we could work with the Plaintiff

18    and come up with some dates if the Court gave us a different

19    Markman date.

20         THE COURT:  Well, what I'm going to ask you to do is

21    to -- to do that now.  I'm -- I'm going to take a recess and

22    consider the effect of the dates.  And I'd like to -- to get

23    this resolved so that we can go forward with this docket

24    control order promptly.  And since I think the necessary

25    parties are here right now, I'm going to just take a recess and

25

1   give you an opportunity to do that while --

2         MR. SMITH:  Your Honor, is there a specific Markman

3   date that the Court wants us to consider?

4         THE COURT:  No, I just want to -- obviously, I want it

5   to be the soonest date that will accommodate the things that

6   have to be done beforehand.  But I've -- I've got the ability

7   to set a date where it needs to be.

8         MR. SMITH:  Your Honor, if -- if we do that, if the

9   date that we come up with may -- will need to accommodate the

10  trial date, do we assume the same trial date, or can we

11  assume -- or can we propose pushing the trial date out -- back

12  some amount, as well?

13        THE COURT:  At this point, I -- I don't want to

14  consider moving that trial date, but I'll -- I will consider

15  that after we address the -- the Markman date.

16        MR. SMITH:  Okay.  Thank you, Your Honor.

17        THE COURT:  All right.  We'll take a recess.

18        LAW CLERK:  All rise.

19        (Recess.)

20        LAW CLERK:  All rise.

21        THE COURT:  Thank you.  Please be seated.

22        Mr. Smith, what have you learned?

23        MR. SMITH:  Your Honor, I'm cognizant that the Court

24  said it's not necessarily going to accept the parties'

25  agreements, but we have talked with the Plaintiff.  And the

1   proposal that I believe the Plaintiff is in agreement with is

2   that we would both be okay if the Court were able to move the

3   Markman date approximately two months and move the trial date a

4   corresponding two months.

5           MR. GILLILAND:  DataTreasury is in agreement with that

6   proposal, Your Honor.

7           THE COURT:  All right.  Based on the fact that the

8   DCO that this was merged with or consolidated with was based on

9   a date that is out of line with what actually happened, I --

10  I'm willing to do that in this case.  And so we will move the

11  jury selection back to the April date, which I think was the --

12  was that the 6th, what -- Becky, do you -- April the 15th?

13          Okay.  And -- all right.  That would be April the 13th

14  as the jury selection date.  And, let's see, we can look for a

15  late August date for the Markman.

16          MR. SMITH:  Your Honor, I believe the existing pro --

17  Markman date the Court had given us previously was July the

18  30th.

19          THE COURT:  July 30.  Oh, I'm sorry, you're right.  So

20  bad math.

21          So a -- a September date is where we should be

22  looking.  September 26th.

23          All right.  September 26th for the Markman hearing.

24  And -- all right.  We will issue a docket control order with

25  those changes in it, preserving the -- the spacing that's

```
 1   already there with the other dates.  And under the
 2   circumstances, we'll grant the separately pending motion to
 3   provide the additional time to get the disclosures in, although
 4   I do want to indicate that that doesn't mean that the Court
 5   will always grant a motion filed on the last day just because
 6   it's unopposed.  But in any event, we'll do it on this
 7   occasion.
 8            Mr. Smith, what else do --
 9            MR. SMITH:  Your Honor, I was just going to --
10            THE COURT:  -- do you want us to take up?
11            MR. SMITH:  I was just going to ask, did the Court
12   want the parties to work on a proposed docket control order and
13   submit that rather than have the Court enter it?
14            THE COURT:  If there's a -- if you think there's
15   something in it that would be helpful.  I know you've already
16   done that once, and we were going to try and keep your spacing,
17   but if you want to -- if you can promptly get us something,
18   then we'll wait for that.
19            MR. GILLILAND:  Your Honor, just one point of
20   clarification that if we're going to submit it, what date
21   should we put for the pre-trial conference, or should we just
22   leave that blank for the Court to fill in?
23            THE COURT:  Why don't you go ahead and leave that
24   blank, and we'll fill that in.  That's fine.  And we --
25   frankly, we -- we'll adjust the dates there.  We may end up
```

```
1   adjusting those dates from what you submit anyway.  But I don't

2   expect you to be able to figure that out.  I understand.

3            I see this one had the pre-trial conference set for

4   December the 30th.

5            MR. SMITH:  Your Honor, I believe the -- the parties

6   could have the Court a proposed order by Friday, if that's

7   acceptable.

8            THE COURT:  Okay.  That will work.  Anything else

9   on -- on your side, Mr. Smith?

10           MR. SMITH:  Nothing from the Defendants, Your Honor.

11           THE COURT:  All right.  Anything else for Plaintiff?

12           MR. GILLILAND:  Nothing from the Plaintiff, Your

13  Honor.

14           THE COURT:  All right.  Thank you, Mr. Gilliland.

15           In that case, we're adjourned.  Thank you.

16           LAW CLERK:  All rise.

17

18

19

20

21

22

23

24

25
```

1                         CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9     /s/ Shelly Holmes                        _____
     SHELLY HOLMES                            Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/14

12

13

14

15

16

17

18

19

20

21

22

23

24

25